IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. CR07-0049 |
| vs. | REPORT AND RECOMMENDATION |
| MACK ARTHUR DAVIS, JR., | |
| Defendant. | |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Was Defendant Denied His Constitutional Right Against Self-
         Incrimination?. . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         1.    Did Defendant Voluntarily Waive His Miranda rights?. . . . . . . 7
         2.    Did Authorities Ignore Defendant's Request for Counsel?. . . . 9
    B.    Was Defendant's Statement Made Voluntarily?. . . . . . . . . . . . . 10

V. SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 11th day of January 2008, this matter came on for hearing on the Motion to Suppress Statements (docket number 37) filed by the Defendant on January 2, 2008. The

1

Government was represented by Assistant United States Attorney Stephanie Rose. Defendant Mack Arthur Davis, Jr., appeared personally and was represented by his attorney, David Nadler.

## II. PROCEDURAL HISTORY

On June 20, 2007, Defendant was charged by Indictment (docket number 1) with three counts of distribution of crack cocaine. Count 3 alleges that the distribution occurred within 1,000 feet of a protected property. The Indictment also alleges Defendant was previously convicted of a felony drug offense and notice is given pursuant to 21 U.S.C. § 851.

Defendant was arrested in Tennessee on August 31, 2007. On September 11, 2007, Magistrate Judge James H. Allen of the United States District Court for the Western District of Tennessee ordered that Defendant be returned to the Northern District of Iowa to answer the instant charges. Defendant initially appeared in this Court on September 28, 2007, and entered a plea of not guilty. Trial was scheduled on November 26, 2007.

At Defendant's request, however, the attorney initially appointed to represent Defendant filed a Motion to Withdraw his appearance. The Court granted the Motion, which necessitated a continuance of the trial to January 22, 2008. At Defendant's request, the second attorney appointed to represent Defendant also filed a Motion to Withdraw his appearance. Following hearing, however, that Motion was denied.

A Superseding Indictment (docket number 47), which is identical to the original Indictment, was filed on January 9, 2008.[1] Following the filing of the Superseding Indictment, however, Defendant filed a Motion to Continue the Trial. The Court concluded that a continuance of the trial was required pursuant to 18 U.S.C. § 3161(c)(2), and the trial is now scheduled on February 11, 2008. *See* Order Rescheduling Trial (docket number 57).

---

[1] According to Assistant United States Attorney Stephanie Rose, the Superseding Indictment was filed to address issues raised by Defendant in his Motion to Dismiss (docket number 41).

2

On January 2, 2008, Defendant filed the instant Motion to Suppress Statements. Defendant requests that the Court enter an order prohibiting the Government from offering any evidence pertaining to statements made by Defendant during an interview given to authorities while in custody on June 28, 2006.

## III. RELEVANT FACTS

At the time of hearing, Officer Chip Joecken of the Cedar Rapids Police Department testified regarding the facts preceding the statement given by Defendant on June 28, 2006. Officer Joecken, who is assigned to the Narcotics Division, testified regarding a controlled purchase of crack cocaine from Defendant on that date. Defendant was arrested and transported to the Cedar Rapids Police Department, where he was interviewed by Sergeant Anthony Robinson, who is also assigned to the Narcotics Division.

During the early afternoon of June 28, 2006, Officer Joecken transported a confidential informant ("CI") to the area near Jim's Foods in Cedar Rapids. The CI had talked to Defendant on the phone earlier that day to arrange for the purchase of crack cocaine. The CI waited near Jim's Foods until a vehicle being driven by Amanda Shryers arrived. Defendant was a passenger in the vehicle. The CI got in the vehicle and Shryers drove off. The CI was dropped off a short time later, after purchasing crack cocaine from Defendant. Officer Joecken then picked up the CI.

According to Officer Joecken, the CI had made controlled purchases of crack cocaine from other individuals as well. The transaction on June 28, 2006, was the third controlled purchase of crack cocaine from Defendant. On each occasion, the CI was taken to and from the scene by officers, the purchase was recorded and surveilled by officers, and serialized buy money was used.

Shortly after the transaction on June 28, the vehicle in which Defendant was a passenger was stopped by uniformed officers. Defendant was arrested and transported to the Cedar Rapids Police Department. Initially, Defendant told Officer Joecken that he wanted to call his mother in Tennessee. Officer Joecken testified that Defendant did not show any signs of being impaired by alcohol or controlled substances. His movements

were not impaired, his speech was not slurred, and his eyes were not bloodshot. Officer Joecken denied that any threats or promises were made to Defendant at that time, or that Defendant was intimidated in any way.

Defendant was placed in a room at the Cedar Rapids Police Department, where he was interviewed by Sergeant Anthony Robinson. At the instant hearing, Sergeant Robinson testified that he first asked Defendant if he still wanted to call his mother, but Defendant indicated that he wanted to talk to the Officer. Defendant was then *Mirandized* and he signed a written waiver of his rights. *See* Government's Exhibit 1. Sergeant Robinson then went through a personal information questionnaire with Defendant. *See* Government's Exhibit 2. Defendant told Sergeant Robinson that he had an eight-ounce can of Budweiser that morning and also smoked a "blunt" (marijuana cigarette).[2] According to Sergeant Robinson, he saw no signs of intoxication or impairment. There was no odor of alcohol or marijuana, Defendant's movements were not impaired, his speech was not slurred, and his eyes were not bloodshot. Defendant's answers were responsive to the questions asked. While Defendant was "very cooperative," according to Sergeant Robinson, Defendant knew "what questions to answer and what questions not to answer." For example, he refused to answer questions regarding the weights of controlled substances, because he knew that it may have an effect on sentencing. Sergeant Robinson testified that no threats or promises were made to Defendant, nor was any intimidation employed. At no time did Defendant ever ask for an attorney.

Defendant initially denied selling crack cocaine that day, but later admitted the transaction when it was noted that he had serialized money in his possession. As set forth in Sergeant Robinson's Supplemental Report (Government's Exhibit 3), Defendant also admitted other transactions.

When asked on cross-examination whether he was aware that Defendant was a sex offender, Officer Joecken testified that he thought it "popped up" on the computer

---

[2] According to the Waiver of Rights (Government's Exhibit 1), the *Miranda* warning was given at 2:55 p.m. Sergeant Robinson's interview of Defendant followed immediately thereafter.

following Defendant's arrest. According to Officer Joecken, however, he did not discuss it with Defendant and could not recall if he mentioned it to the other officers. Sergeant Robinson could not recall discussing the issue with Defendant and testified that, "I don't remember him being a sex offender, if he is one."

Defendant told Sergeant Robinson that he was interested in cooperating with authorities and he was released from custody later that day. Officer Joecken testified that during the next five or six weeks, Defendant made fourteen controlled buys under Officer Joecken's supervision. During that time, Defendant never claimed that he had been threatened following his arrest or that any promises had been made. In addition, Defendant did not claim that he was intoxicated or impaired when interviewed following his arrest.

## IV. ANALYSIS

Defendant argues that the statements made by him while in custody on June 28, 2006, must be suppressed for two reasons: First, Defendant claims that the interrogation continued after he invoked his right to counsel; and second, the statement was not given voluntarily because "the Defendant was under the influence of a combination of alcohol and drugs."[3]

### A. *Was Defendant Denied His Constitutional Right Against Self-Incrimination?*

Among the most hallowed rights guaranteed by the United States Constitution is that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In the landmark case of *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Among other things, the person must be warned that he has a right to remain silent and "that he has a right to the presence of

---

[3] *See* Brief in Support of Motion to Suppress Statement (docket number 37-2) at 7.

an attorney, either retained or appointed." *Id*. If the person indicates "in any manner and at any stage" that he wishes to consult with an attorney, then "there can be no questioning." *Id*. at 444-445. The Court noted, however, that the defendant may waive his or her rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Id*. at 444.

The Court in *Miranda* held that not only must an accused be warned of his right to remain silent, he must also be advised of the consequences associated with waiving that right.

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it.

*Id*. at 469. Critical to Defendant's right to avoid self-incrimination, however, is his right to representation by counsel.

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today.

*Id*. A person who has been advised of this *Miranda* right has been sufficiently apprised of his Sixth Amendment right to counsel. *United States v. Garlewicz*, 493 F.3d 933, 936 (8th Cir. 2007) (citing *Patterson v. Illinois*, 487 U.S. 285 (1988)).

In this case, Defendant claims that he did not voluntarily waive his *Miranda* rights and that he invoked his right to counsel, to no avail. Defendant's claim is set forth in his Brief, as follows:

> The evidence at hearing will show that the Defendant was in the custody of law enforcement personnel when he was interrogated and made incriminating statements in response to the interrogation. The evidence will further show that the Defendant did not voluntarily waive his *Miranda* rights. The evidence will further show that the Defendant invoked his right

> to counsel, was not provided counsel, and interrogation continued.

Brief in Support of Motion to Suppress Statement (docket number 37-2) at 4. In its Resistance to Defendant's Motion to Suppress (docket number 46), the Government concedes that Defendant was in custody when he was questioned by Sergeant Robinson. Accordingly, it is undisputed that the protections afforded by *Miranda* apply. The Government argues, however, that there is no factual basis for Defendant's claim that he did not voluntarily waive his *Miranda* rights, or that he asked for an attorney at any time during the interrogation.

### 1. *Did Defendant Voluntarily Waive His Miranda rights?*

Prior to questioning Defendant, Sergeant Robinson reviewed Defendant's *Miranda* rights by reading a "Waiver of Rights of Person Being Detained for Questioning" (Government's Exhibit 1). While Sergeant Robinson could not swear that Defendant actually read the document, he testified that Defendant was "looking at" the written Waiver when Sergeant Robinson read the Waiver out loud. Among other things, the written Waiver provided:

> I am also entitled to talk to a lawyer before answering any questions. If I have a lawyer and I want to talk to him or have him present, I can telephone him and talk to him and have him present before I answer any questions. If I do not have the money to hire a lawyer, I am entitled to have a lawyer appointed by the court without cost to me, and talk to him and have him present before I answer any questions.

Waiver of Rights of Person Being Detained for Questioning (Government's Exhibit 1).

Defendant told Sergeant Robinson that he understood his rights and agreed to waive them. Defendant then signed the document immediately below the last paragraph, which reads as follows:

> I have read the above. I fully understand it, and I wish to waive all of my foregoing rights and answer the questions asked of me.

*Id.*

7

Defendant's Motion to Suppress Statements and supporting Brief are somewhat imprecise regarding the reasons why Defendant does not believe he voluntarily waived his *Miranda* rights. Apparently, however, the arguments are the same as those asserted in support of his claim that his statement was not made voluntarily. Specifically, Defendant complains of "coercive law enforcement activity" and claims that he was impaired when the statement was given (and, presumably, when he waived his *Miranda* rights).

> At hearing, the Government will fail in its burden to prove by a preponderance of the evidence, in light of the totality of the circumstances, that the statements made by Defendant were not [sic] voluntarily made. The statement was the product of coercive law enforcement activity and the Defendant's will was overborne. The evidence will show that the Defendant was under the influence of a combination of alcohol and drugs. The evidence will show that the Defendant's capacity for self-determination was critically impaired such that his statement was not the product of a rational intellect and free will.

Brief in Support of Motion to Suppress Statement (docket number 37-2) at 7.

At the time of hearing, however, Defendant failed to introduce any evidence in support of his claims. There was no evidence that the police made any threats or promises in order to secure Defendant's waiver of his *Miranda* rights, nor was there any evidence of police intimidation. Both Officer Joecken and Sergeant Robinson testified that Defendant did not show any sign of being under the influence of alcohol or drugs. The *Miranda* warnings were read to Defendant and he apparently followed along. Defendant then verbally indicated that he understood his rights and agreed to waive the same. Furthermore, Defendant signed a written waiver of his *Miranda* rights.

A defendant's statement may be used only if the defendant "knowingly and voluntarily" waived his or her *Miranda* rights. *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006).

> "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was

8

> a product of the suspect's free and deliberate choice, and not
> the product of intimidation, coercion, or deception."

*Id.* at 855 (quoting *Thai v. Mapes*, 412 F.3d 970 (8th Cir. 2005)). *See also United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006) ("An individual's waiver of the Fifth Amendment privilege against self-incrimination and Sixth Amendment right to counsel is valid if made voluntarily, knowingly and intelligently.").

The Court concludes that Defendant's waiver of his *Miranda* rights was both knowing and voluntary. Defendant was made aware of his *Miranda* rights, including the consequences of abandoning his rights, and agreed both orally and in writing to waive those rights. There is no indication that the waiver was the product of intimidation, coercion, or deception. *Harper*, 466 F.3d at 643. Furthermore, there is no evidence to support Defendant's claim that he was impaired by drugs or alcohol when the waiver was given.

### 2. Did Authorities Ignore Defendant's Request for Counsel?

Defendant claimed in his Brief that "[t]he evidence will further show that the Defendant invoked his right to counsel, was not provided counsel, and interrogation continued."[4] As the Court noted in *Miranda*, if a suspect indicates "in any manner and at any stage" that he wishes to consult with an attorney, then "there can be no questioning." 384 U.S. at 444-445. *See also Davis v. United States*, 512 U.S. 452, 458 (1994) ("If a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation."). Once a suspect has waived his *Miranda* rights, however, a subsequent request for counsel must be unambiguous.

> The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused *actually invoked* his right to counsel. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to

---

[4]*See* Brief in Support of Motion to Suppress Statement (docket number 37-2) at 4.

> counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.
>
> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

*Id.* at 458-459 (emphasis in original) (all citations omitted). *See also Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006).

Defendant's claim in this regard fails, however, for a simple reason. There is no evidence that Defendant ever invoked his right to counsel. Both Officer Joecken and Sergeant Robinson testified that Defendant never requested an attorney. Defendant offered no evidence to the contrary.

### B. Was Defendant's Statement Made Voluntarily?

Defendant claims that he "involuntarily made the statements."[5] Defendant claims that his "will was overborne," the statement was "the product of coercive law enforcement activity," and that he was "under the influence of a combination of alcohol and drugs."[6] Again, however, Defendant's claim fails for lack of evidence.

The standard to be applied by the Court in determining whether a statement is made voluntarily was summarized in *United States v. LeBrun*, 363 F.3d 715 (8th Cir. 2004):

---

[5] *See* Motion to Suppress Statements (docket number 37) at 1.

[6] *See* Brief in Support of Motion to Suppress Statement (docket number 37-2) at 7.

10

> "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."
>
> Whether a confession is involuntary is judged by the totality of the circumstances. The court must look at the "conduct of the officers and the characteristics of the accused." The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary.

*Id.* at 724 (internal citations omitted). *See also United States v. Hyles*, 479 F.3d 958, 966 (8th Cir. 2007).

As discussed above, there was no evidence offered to suggest that Sergeant Robinson acted improperly in questioning Defendant. The record is silent regarding the length of the interrogation, but Defendant offered no evidence that he was deprived of food, drink, or bathroom privileges. There is no evidence that Defendant was threatened or given any promises in order to secure a statement. While Defendant told Sergeant Robinson that he drank an eight-ounce beer and smoked a "blunt" that morning, both officers testified that there was no indication that Defendant was impaired in any way. The Court concludes that the Government has met its burden of proving that Defendant's statement was given voluntarily.

## V. SUMMARY

In summary, the Court concludes that Defendant voluntarily waived his right to remain silent and his right to counsel, both orally and in writing. There is no evidence that Defendant subsequently invoked his right to counsel. After considering the totality of the circumstances, the Court concludes that Defendant's statement on June 28, 2006, was given voluntarily.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** the Motion to Suppress Statements (docket number 37) filed by Defendant on January 2, 2008.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendation, any party may serve and file written objections with the District Court.

DATED this 16th day of January, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA