IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MACK ARTHUR DAVIS, JR.,<br><br>Defendant. | Case No. CR07-0049<br><br>REPORT AND RECOMMENDATION REGARDING MOTION FOR PERMISSION TO WITHDRAW GUILTY PLEA |

TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.   Guilty Plea. . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     B.   Motion to Withdraw Guilty Plea. . . . . . . . . . . . . . . . . 6
          1.   Defendant's testimony. . . . . . . . . . . . . . . . . . . 7
          2.   Mr. Nadler's testimony. . . . . . . . . . . . . . . . . . 9

IV.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     A.   Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . 11
     B.   Operation of USSG § 3E1.1(b). . . . . . . . . . . . . . . . . 12
     C.   Knowing, Voluntary, and Intelligent Guilty Plea. . . . . . . . 15

V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.  RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . 16

1

## I. INTRODUCTION

On the 31st day of March 2008, this matter came on for hearing on the Motion for Permission to Withdraw Guilty Plea (docket number 85) filed by the Defendant on March 11, 2008. The Government was represented by Special Assistant United States Attorney Mark A. Tremmel. Defendant Mack Arthur Davis, Jr., appeared personally and was represented by his attorney, David Nadler.

After Defendant testified on March 31, however, it was determined that Mr. Nadler would be required to testify and, therefore, need to withdraw his appearance on Defendant's behalf. Attorney Mark C. Meyer was then appointed to represent Defendant and the hearing was continued to April 14, 2008. At the time of the rescheduled hearing, however, Mr. Meyer objected to the Government calling Mr. Nadler as a witness, citing Defendant's attorney-client privilege. The Court gave counsel additional time to brief the issue and rescheduled the hearing for April 23, 2008.

At the rescheduled hearing on April 23, the Government was represented by Mr. Tremmel and Assistant United States Attorney Stephanie Rose. Defendant appeared personally and was represented by his attorney, Mr. Meyer.

## II. PROCEDURAL HISTORY

This case has a long history. On June 20, 2007, Davis was charged by Indictment (docket number 1) with two counts of distribution of crack cocaine and one count of distribution of crack cocaine within 1,000 feet of a school. At his initial appearance on September 28, 2007, Defendant entered a plea of not guilty and trial was scheduled for November 26, 2007. Attorney F. David Eastman was appointed to represent Defendant at public expense.

On November 6, 2007, Mr. Eastman filed a Motion to Withdraw (docket number 14), indicating that Defendant had lost confidence in Mr. Eastman's abilities. Following hearing, the Court granted the motion and allowed Mr. Eastman to withdraw. *See* Order Appointing Substitute Counsel (docket number 17). Attorney David Nadler then entered

an Appearance on Defendant's behalf. Upon Defendant's motion, the trial was continued to January 22, 2008.

On December 13, 2007, Mr. Nadler filed a Motion for Leave to Withdraw (docket number 24), stating that Defendant was "dissatisfied with the undersigned's services, does not trust the undersigned, and does not cooperate with the undersigned." Following hearing, the Court denied Mr. Nadler's motion to withdraw. *See* Ruling on Motion for Leave to Withdraw (docket number 28).

On December 26, 2007, Defendant filed a Motion (docket number 29), requesting an extension of the deadline for pleading guilty and receiving full credit for acceptance of responsibility. On December 27, 2007, the undersigned Magistrate Judge entered an Order (docket number 31) denying the motion, noting that "[t]he sentencing judge must determine the extent of credit, if any, to be given Defendant for acceptance of responsibility."

On January 9, 2008, the Government filed a Superseding Indictment (docket number 47) which did not change the charges, but was intended to address issues raised by Defendant in a Motion to Dismiss (docket number 41) filed on January 3, 2008. Defendant then filed another Motion to Continue Trial (docket number 53), which was granted by the Court in an Order (docket number 57) filed on January 14, 2008. Trial was rescheduled for February 11, 2008.

Defendant's Motion to Dismiss came on for hearing before Chief Judge Linda R. Reade on January 28, 2008.[1] At the time of hearing, Mr. Nadler informed the Court that the superseding Indictment addressed the issues raised by Defendant's Motion to Dismiss and, therefore, the Motion was withdrawn. At that hearing, Mr. Nadler also raised the issue of Defendant pleading guilty and receiving a third-level reduction for acceptance of responsibility.

---

[1] A transcript of the hearing was introduced at the instant hearing as Defendant's Exhibit B.

On February 4, 2008, one week prior to the scheduled trial, Defendant filed a Notice of Intent to Plead Guilty With Plea Agreement (docket number 75). Defendant appeared before the undersigned Magistrate Judge for a guilty plea hearing on February 6, 2008, and entered a plea of guilty to a lesser included offense of Count 3 (distribution of crack cocaine *without* the enhancement of distributing near a school). The undersigned Magistrate Judge filed a Report and Recommendation (docket number 83), recommending that the District Court accept Defendant's plea of guilty. No objection was made by Defendant and on February 21, 2008, Judge Reade filed an Order accepting Defendant's plea of guilty. *See* Order Regarding Magistrate's Report and Recommendation Concerning Defendant's Guilty Plea (docket number 84).

On March 11, 2008, Defendant filed the instant Motion for Permission to Withdraw Guilty Plea (docket number 85), claiming that he (1) misunderstood the operation of USSG § 3E1.1(b), (2) misunderstood the plea agreement, and (3) his guilty plea was not knowingly, intelligently, and voluntarily entered.

### III. RELEVANT FACTS

#### A. Guilty Plea

On February 6, 2008, Defendant appeared, together with attorney David Nadler, before the undersigned Magistrate Judge and entered a plea of guilty to a lesser included offense of Count 3 of the Superseding Indictment. After establishing Defendant's understanding and competency, the Court informed Defendant of his rights, as set forth in FEDERAL RULE OF CRIMINAL PROCEDURE 11(b)(1).[2] The Court then addressed Defendant regarding a plea agreement which was entered into between the parties. Defendant advised the Court that he reviewed the Plea Agreement before signing it, understood its terms, and did not have any questions about the Plea Agreement.[3]

---

[2] Defendant does not claim that the Court failed to fully comply with the requirements of Rule 11(b)(1).

[3]     THE COURT:     Did Mr. Nadler review [the plea agreement] with you before you signed it?

(continued...)

4

Defendant was advised of the statutory penalties which are applicable, including a maximum term of imprisonment of thirty years. The Sentencing Guidelines were discussed, but Defendant was warned that Judge Reade was not bound by the Plea Agreement, nor was she required to sentence Defendant within the Sentencing Guidelines.[4]

Defendant was also advised that after his guilty plea was accepted by Judge Reade, he would have no right to withdraw his guilty plea.

---

[3](...continued)

| | | |
|---|---|---|
| | DEFENDANT DAVIS: | Yes. |
| | THE COURT: | Do you believe that you understand all of the information on Government's Exhibit 1? |
| | DEFENDANT DAVIS: | Yeah. |
| | THE COURT: | Do you have any questions about the plea agreement that was reached between the parties in this case? |
| | DEFENDANT DAVIS: | No. |

Defendant's Exhibit A, 13:3-12.

[4] THE COURT: Mr. Davis, I've asked for these estimates [regarding the Sentencing Guidelines] just to give you some idea as to what could happen at the time of sentencing. You should understand, however, that neither the lawyers nor I will be sentencing you. Judge Reade has the responsibility for determining your sentence and she is not bound by the terms of any agreement entered into between the parties and is not bound by any recommendation of the attorneys. She may calculate a higher or lower guideline range than what's been predicted by the lawyers or what we've talked about here today. Also, as I indicated earlier, the sentencing guidelines are advisory only. Judge Reade could depart or vary from the guidelines and impose any reasonable sentence permitted by law, which means you could receive a sentence below or above the advisory guideline range, and, in fact, you could receive a sentence all the way up to the maximum statutory sentence, which in this case is 30 years. Do you understand all of that?
DEFENDANT DAVIS Yes.

Defendant's Exhibit A, 18:6-24.

| THE COURT: | After your guilty plea has been accepted by Judge Reade, then you will have no right to withdraw your guilty plea, even if you don't like the sentence she gives you. However, both you and the government have the right to appeal the sentence to the Eighth Circuit Court of Appeals. Do you have any questions regarding your right to appeal? |
|---|---|
| DEFENDANT DAVIS: | No. |

Defendant's Exhibit A, 20:22-21:4.

Defendant then advised the Court that he had no questions and still intended to plead guilty.[5] The Court found that Defendant's decision to plead guilty was "voluntary, knowing, and not the result of any force, pressure, threats, or promises, other than the promises made by the Government in the Plea Agreement," and therefore recommended that Defendant's plea of guilty be accepted.[6] The parties were also reminded that they had ten days, not counting weekends and holidays, in which to file an objection to the recommendation. No objection was made and on February 21, 2008, Judge Reade filed an Order accepting Defendant's plea of guilty.

### B. *Motion to Withdraw Guilty Plea*

On March 11, 2008 (34 days after appearing and pleading guilty, and 19 days after Judge Reade accepted Defendant's guilty plea), Defendant filed the instant Motion for Permission to Withdraw Guilty Plea. In his Motion, Defendant claims that he

---

[5]
| THE COURT: | Mr. Davis, do you have any questions about anything we've discussed here today? |
|---|---|
| DEFENDANT DAVIS: | No. |
| THE COURT: | Is it still your desire to plead guilty? |
| DEFENDANT DAVIS: | Yeah. |

Exhibit A, 21:23-22:3.

[6] Exhibit A, 22:18-20.

6

(1) misunderstood the operation of USSG § 3E1.1(b),[7] (2) misunderstood the Plea Agreement, and (3) his guilty plea was not knowingly, intelligently, and voluntarily entered.

### 1. *Defendant's testimony*

The Motion for Permission to Withdraw Guilty Plea initially came on for hearing on March 31, 2008. Defendant testified at that time under examination by Mr. Nadler and cross-examination by Ms. Rose.[8] Defendant testified that he misunderstood comments made by Judge Reade at the hearing on the Motion to Dismiss on January 28, 2008. At the conclusion of that hearing, Mr. Nadler asked about a "time limitation" for acceptance of responsibility.[9] The Court advised Defendant that when ruling on the Motion to Suppress, "I will definitely give you a date by which I have to know and you have to advise the Government."[10] In an Order (docket number 71) filed on February 1, 2008, Judge Reade denied Defendant's Motion to Suppress and established a deadline for receiving an additional one-level decrease for acceptance of responsibility.[11] Defendant testified that he did not know that the Court's consideration of a third-level reduction was

---

[7] § 3E1.1(b) permits a third-level reduction for acceptance of responsibility if Defendant timely notifies authorities of his intention to plead guilty.

[8] A transcript of the March 31, 2008, hearing was introduced at the aborted hearing on April 14, 2008, as Government's Exhibit 1.

[9]  MR. NADLER:   Just for the defendant's benefit, is there a time limitation that the Court has in mind by which the defendant can still plead guilty and receive the reduction for acceptance of responsibility, or what's the Court's position?

Defendant's Exhibit B, 16:21-17:1.

[10] Defendant's Exhibit B, 18:5-7.

[11] The Order provided that "Defendant's deadline for receiving the additional one-level decrease for acceptance of responsibility, *see* Trial Management Order (docket no. 11), at 7 (discussing USSG § 3E1.1(b)(2)), is **CONTINUED to Monday, February 4, 2008.**" (emphasis in original)

dependent upon the Government filing a Motion requesting that reduction.[12] Defendant testified that it was his understanding that if he "pled guilty by the deadline," he would get "all three points" for acceptance of responsibility and that he would not have pleaded guilty otherwise.[13]

Defendant also testified that he merely "skimmed" the Plea Agreement. Defendant claimed that it was "a rush job" and that he "really didn't then understand a lot of things he was saying to me."[14] Defendant also testified that he did not understand that if he was found to have obstructed justice, "it was unlikely that you would receive an acceptance of responsibility reduction."[15]

On cross-examination, however, Defendant conceded that the Plea Agreement "clearly says the parties are going to litigate whether you obstructed justice."[16] The Plea Agreement provides that "[t]he parties agree to litigate whether a two-level increase under USSG § 3C1.1 should be added for obstruction of justice because defendant knowingly avoided arrest."[17] Defendant further conceded that the Plea Agreement "says the parties are going to litigate whether you get acceptance of responsibility."[18] The Plea Agreement

---

[12]  Q.  Did you know at that time that the government had to file a motion for you to get the third level decrease and Judge Reade couldn't give the third level decrease unless the government filed a motion?
     A.  No.

Government's Exhibit 1, 7:8-12.

[13] Government's Exhibit 1, 7:13-21.

[14] Government's Exhibit 1, 8:7-20.

[15] Government's Exhibit 1, 10:24-11:7.

[16] Government's Exhibit 1, 13:18-21.

[17] Defendant's Exhibit D, ¶ 20(C) at 7-8.

[18] Government's Exhibit 1, 13:22-24.

states that "[t]he parties agree to litigate whether any adjustment applies under USSG § 3E1.1."[19]

The Plea Agreement specifically states that an upward adjustment for obstruction of justice "may preclude any decrease for acceptance of responsibility, unless defendant's is 'extraordinary.'"[20] The Plea Agreement further alerts Defendant that the Government did not intend to make a motion under USSG § 3E1.1(b) for a third-level reduction for acceptance of responsibility.

> If the defendant continues to accept responsibility and the court grants a two-level reduction under USSG § 3E1.1(a), the United States acknowledges the court agreed defendant would be eligible for an additional one-level reduction if he notified the court and United States of an intent to plead guilty by February 4, 2008. The United States agrees defendant notified the court and government of his intent to plead guilty on February 4, 2008. **However, defendant understands it is not the United States' present intent to make a motion under USSG § 3E1.1(b), as the United States does not agree defendant timely accepted responsibility.**

Defendant's Exhibit D, ¶ 20(D) at 8. (emphasis added).

Defendant acknowledged that he admitted under oath at the plea change hearing that he committed the crime and further testified in a proffer that he committed the crime.[21] Notably, Defendant does not claim factual innocence on the charge.

2. *Mr. Nadler's testimony*

Mr. Nadler appeared on Defendant's behalf on November 14, 2007, and was permitted to withdraw on March 31, 2008. (*See* docket numbers 19 and 95.) While he could not recall the precise number of times he met with Defendant, Mr. Nadler testified at the instant hearing that it was "certainly more than five." Mr. Nadler characterized Defendant as "hard headed" and "a poor listener," which made it difficult for Mr. Nadler

---

[19] Defendant's Exhibit D, ¶ 20(D) at 8.

[20] Defendant's Exhibit D, ¶ 20(D) at 8.

[21] Government's Exhibit 1, 15:12-16:21.

to explain fully the consequences of going to trial or pleading guilty. Nonetheless, Mr. Nadler explained various sentencing outcomes depending on the resolution of contested sentencing issues.

The first proposed plea agreement (Plaintiff's Exhibit 2) was dated November 13, 2007 (the day *prior* to Mr. Nadler's formal appearance in the case).[22] Mr. Nadler responded in a letter dated November 23, 2007 (Plaintiff's Exhibit 3), acknowledging receipt of the proposed plea agreement and indicating that "I hope to be able to discuss it with you within the next two weeks." After further negotiations, a second proposed plea agreement (Plaintiff's Exhibit 4) was extended, dated February 5, 2008. This agreement was signed by Defendant and Mr. Nadler, with certain deletions and insertions. When the copy with handwritten changes was delivered by Mr. Nadler to Ms. Rose, she typed the changes requested by Defendant. The amended agreement (Defendant's Exhibit D) was then delivered back to the jail by Mr. Nadler, where Defendant and Mr. Nadler signed it.

According to Mr. Nadler, Defendant was "an exceptionally difficult client; therefore I took precautions" in securing Defendant's signature. Mr. Nadler testified that he carefully read each paragraph out loud to Defendant, paraphrased it, and asked Defendant if he understood. Specifically, Mr. Nadler recalled discussing with Defendant the provisions relating to obstruction of justice and acceptance of responsibility. *See* Defendant's Exhibit D, ¶¶ 20(C) and (D), at pp 7-8. Mr. Nadler recalled that Defendant was upset that the Government was pursuing a two-level increase for obstruction of justice. Defendant told Mr. Nadler that he had been "beaten up" for cooperating with authorities and left the State for that reason. Defendant was also upset that the Government was contesting a third-level reduction for acceptance of responsibility.

Mr. Nadler testified that he specifically recalled discussing with Defendant the fact that if the Court found obstruction of justice, then it was highly unlikely that Defendant would receive a downward adjustment for acceptance of responsibility. The plea

---

[22] At the instant hearing, Mr. Nadler testified that he believed the first proposed agreement may have been discussed with Defendant's first counsel.

agreement cites *United States v. Honken*, and Mr. Nadler explained that a finding of obstruction of justice generally precluded any decrease for acceptance of responsibility. Mr. Nadler conceded, however, that he did not explain to Defendant that if the Government did not request a third-level reduction for acceptance of responsibility, then it could not be granted by the Court at the time of sentencing.

## IV. DISCUSSION

### A. Applicable Law

Federal Rule of Criminal Procedure 11(d) provides in pertinent part:

> (d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:
>
> . . .
>
> (2) after the court accepts the plea, but before it imposes sentence if:
>
> . . .
>
> (B) the defendant can show a fair and just reason for requesting the withdrawal.

FED. R. CRIM. P. 11(d)(2)(B). *See also* United *States v. Maxwell*, 498 F.3d 799, 800 (8th Cir. 2007) ("A defendant may withdraw a guilty plea after the court accepts the plea, and before sentencing if he demonstrates '"a fair and just reason" for the withdrawal.'") (quoting *United States v. Mugan*, 441 G.3d 622, 630 (8th Cir. 2006)). "The 'fair and just' standard is a liberal one, but it does not create an automatic right to withdraw a plea." *United States v. Smith*, 422 F.3d 715, 723 (8th Cir. 2005) (citing *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996)). "The defendant bears the burden of proving why one of the recognized justifications should permit a withdrawal of what he had solemnly made under oath." *Smith*, 422 F.3d at 723-24 (citing *United States v. Morales*, 120 F.3d 744, 747-48 (8th Cir. 1997)). "A guilty plea is a solemn act not to be set aside lightly." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997) (citing *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

In addition to considering the "fair and just reason" standard, a court may also consider (1) any assertions of legal innocence, (2) the amount of time between the guilty

plea and the motion to withdraw, and (3) the prejudice to the government in granting the motion. *Maxwell*, 498 F.3d at 801 (citation omitted). The Court is not required to address the additional factors if the defendant fails to show a fair and just reason for withdrawing his or her plea. *Id.* (citing *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005)).

### B. *Operation of USSG § 3E1.1(b)*

The Guidelines Manual of the United States Sentencing Commission provides that a Defendant may receive credit at the time of sentencing for acceptance of responsibility. This credit is recognized by an adjustment in the Defendant's offense level. A third-level reduction cannot be awarded, however, unless the Government makes an appropriate motion.

> Acceptance of Responsibility
> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, *and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty*, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

USSG § 3E1.1. (emphasis added)

As set forth in the Commentary to Section 3E1.1, the timeliness of the Defendant's acceptance of responsibility is a consideration in determining whether credit is given.

> In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

12

USSG § 3E1.1, comment. (n.6). The justification for requiring a Government motion for a third-level reduction for acceptance of responsibility is found in the Commentary to Section 3E1.1.

> Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.

USSG § 3E1.1, comment. (n.6).

Defendant claims that he "misunderstood the operation of U.S.S.G. § 3E1.1(b)." Specifically, Defendant claims that he did not know an additional one-level decrease was contingent upon a motion being filed by the Government to request such an additional decrease. The Plea Agreement entered into between the parties, however, discussed at length the issue of acceptance of responsibility. On that subject, the parties agreed as follows:

> D.  **Acceptance of Responsibility:**
> The parties agree to litigate whether any adjustment applies under USSG §3E1.1. The parties understand that application of an upward adjustment under USSG §3C1.1 may preclude any decrease for acceptance of responsibility, unless defendant's [case] is "extraordinary." *See United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). If the Court finds defendant did not obstruct justice under USSG §3C1.1, the United States agrees that, as of the date of this agreement, defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility. The government shall be free to contest the adjustment under USSG §3E1.1(a) should it discover information showing defendant has not accepted responsibility or should the defendant subsequently fail to continue to accept responsibility by failing to pay the special assessment; by providing false information to the court, the probation office, or the government; by unlawfully using controlled substances; by attempting to obstruct justice; by falsely denying or frivolously contesting relevant conduct; by breaching this plea agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent

> with, the granting of the adjustment under USSG §3E1.1(a). If the defendant continues to accept responsibility and the court grants a two-level reduction under USSG §3E1.1(a), the United States acknowledges the court agreed defendant would be eligible for an additional one-level reduction if he notified the court and United States of an intent to plead guilty by February 4, 2008. The United States agrees defendant notified the court and government of his intent to plead guilty on February 4, 2008. However, defendant understands it is not the United States' present intent to make a motion under USSG §3E1.1(b), as the United States does not agree defendant timely accepted responsibility.

*See* Plea Agreement (docket number 82-2) ¶ 20(D), at 8.

Notably, the Plea Agreement states that "[t]he parties understand" that an upward adjustment under USSG § 3C1.1 for obstruction of justice "may preclude any decrease for acceptance of responsibility." The Plea Agreement also states that "defendant understands it is not the United States' present intent to make a motion under USSG § 3E1.1(b), as the United States does not agree defendant timely accepted responsibility."

At the plea change hearing, Defendant acknowledged that Mr. Nadler had reviewed the Plea Agreement with him before he signed it.[23] In addition, Defendant told the Court that he understood the agreement and had no questions about its terms.[24] The Plea Agreement explicitly stated that an upward adjustment for obstruction of justice "may preclude" any decrease for acceptance of responsibility, except in "extraordinary" cases. It also explicitly alerted Defendant to the fact that the Government did not intend to make a motion under 3E1.1(b) for a third-level decrease. Mr. Nadler testified that he took special care to read and review each paragraph of the Plea Agreement with Defendant. In the Plea Agreement, Defendant acknowledged that he "has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its

---

[23] Defendant's Exhibit A, 13:3-5.

[24] *Id.*, 13:6-12.

provisions."[25] The Court concludes that Defendant's belated efforts to claim that these matters were not understood by him is ineffective. Defendant has not met his burden of proving "a fair and just reason" for being permitted to withdraw his guilty plea.

### C. Knowing, Voluntary, and Intelligent Guilty Plea

In order to be constitutionally valid, "a guilty plea must be knowing, voluntary, and intelligent." *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999). FED. R. CRIM. P. 11 requires a court which presides over a guilty plea to conduct a colloquy with the defendant to ensure that the district court only accepts a knowing, voluntary, and intelligent guilty plea. *Id. See* FED. R. CRIM. P. 11(b)(1), (2), (3) (requiring the court to advise the defendant of the rights he or she is giving up by pleading guilty, question the defendant regarding the voluntariness of his or her decision to plead guilty, and determine that a factual basis exists for the plea). The transcript from the plea change hearing held on February 6, 2008, demonstrates that the Court complied with FED. R. CRIM. P. 11(b).

In his Motion, Defendant claims that his guilty plea "was not knowingly, intelligently, and voluntarily entered." While it is not entirely clear from his supporting brief (docket number 85-2), Defendant apparently relies on the fact that he did not understand that a third-level reduction for acceptance of responsibility is dependent upon the Government making a motion requesting the additional decrease. Even though the Plea Agreement clearly stated that "it is not the United States' present intent" to move for the third-level reduction, Mr. Nadler admitted at the instant hearing that he did not advise Defendant that a third-level reduction would thus be precluded. According to Mr. Nadler, he believed that any reduction for acceptance of responsibility "was iffy" because it was likely that the Court would find an increase for obstruction of justice. According to Mr. Nadler, he clearly explained to Defendant that an increase for obstruction of justice would preclude any decrease for acceptance of responsibility, except in extraordinary circumstances.

---

[25] Defendant's Exhibit D, ¶ 31, at 13.

The Court concludes that Defendant's guilty plea was knowing and voluntary. The Plea Agreement advised Defendant that there were no promises or guarantees regarding any sentence to be imposed.[26] In addition, Defendant was advised in the guilty plea hearing that Judge Reade "is not bound by any recommendation of the attorneys."[27] Accordingly, while Defendant may not have known that a third-level reduction for acceptance of responsibility was precluded by the Government's refusal to request the same, he was clearly advised that *any* reduction for acceptance of responsibility was discretionary with the Court. He was also advised by his attorney that a finding of obstruction of justice would likely prohibit any reduction for acceptance of responsibility.

## V. CONCLUSION

The Court finds that Defendant's plea of guilty at the change of plea hearing held on February 6, 2008, was knowing and voluntary. The Court further finds that Defendant failed to meet his burden of establishing a "fair and just" reason for withdrawal of his guilty plea. Therefore Defendant's Motion for Permission to Withdraw Guilty Plea (docket number 85) should be denied.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Motion for Permission to Withdraw Guilty Plea (docket number 85) filed by Defendant on March 11, 2008.

The parties are advised, pursuant to 18 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the district court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need*

---

[26] *See, e.g.*, Plea Agreement (Defendant's Exhibit D), ¶ 18 at 6 ("The United States makes no promises as to the sentence to be imposed.") and ¶ 19 at 7 ("The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the court.").

[27] Exhibit A, 18:12-13.

*to rule on the objections."* Accordingly, *if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on March 31, 2008.*

DATED this 30th day of April, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA